IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Malcom Jamal Reid, | ) | C/A No.: 1:12-1084-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Joseph F. Anderson, Jr.'s June 6, 2012, order referring this matter for disposition. [Entry #10]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.   Relevant Background

   A.   Procedural History

Plaintiff, then a minor child, was awarded SSI benefits on November 22, 2000. Tr. at 44–52.  On April 27, 2007, the Social Security Administration informed Plaintiff that he was no longer eligible for SSI and notified him that he had 60 days to appeal the decision.  Tr. at 60–62.  Plaintiff retained an attorney and sought an untimely request for reconsideration of the denial of benefits in August 2007.  Tr. at 64, 161.  Plaintiff's request was dismissed in August 2007.  Tr. at 161.  The request was later reinstated and sent to the Office of Disability Adjudication and Review.  Tr. at 180.  The ultimate disposition of the request for reconsideration is not clear from the record.

On April 11, 2008, Plaintiff filed an application for SSI in which he alleged his disability began on July 21, 1998.  Tr. at 10.  His application was denied initially and upon reconsideration.  Tr. at 58–59.  On August 17, 2010, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 19–43 (Hr'g Tr.).  The ALJ issued an unfavorable decision on September 17, 2010, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 10–18.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 23, 2012.  [Entry #1].

2

B.  Plaintiff's Background and Medical History

1.  Background

Plaintiff was 22 years old at the time of the hearing. Tr. at 21. He completed high school. Tr. at 22. He has no past relevant work. Tr. at 38.

2.  Medical History

Notes from Berkeley County School District indicate that Plaintiff was referred for psychoeducational evaluation due to difficulties with academic achievement on October 15, 1997, when he was nine years old. Tr. at 227. Testing showed Plaintiff to be in the "severely below average range of intellectual functioning." Tr. at 228.

On February 16, 1998, Plaintiff was referred for placement in a self-contained special education classroom. Tr. at 226. It was noted that his attention deficit hyperactivity disorder ("ADHD") adversely affected his attention span. *Id.* The record includes documentation of Individual Education Program ("IEP") services from 2001 through 2006 based on Plaintiff's ADHD, severe behavioral problems, and below-grade level assessments in the areas of reading, writing, and mathematics. *See* Tr. at 231–428.

School records dated December 11, 2002, indicate that Plaintiff, who was 14 years old at the time, was enrolled in a self-contained classroom setting due to his diagnosis of ADHD. Tr. at 217. He had been disciplined for not following school and classroom rules, responding inappropriately to adult requests, refusing to follow directions, using inappropriate language, and fighting. Tr. at 217–18. Escalating methods of intervention proved to be ineffective. Tr. at 218. During testing, Plaintiff was observed to be exerting his best effort, but was noted to be unrealistic concerning his own ability and worked at

his characteristic "slow tempo." Tr. at 218. Testing that day yielded a full scale IQ of 63 and indicated that Plaintiff was functioning substantially below the average range of intellectual ability. Tr. at 219, 222.

A functional behavior assessment dated May 23, 2002, indicates that Plaintiff was argumentative with adults, refused to follow directions, had trouble following rules, and had poor anger management. Tr. at 421–22.

On June 17, 2003, Plaintiff was examined by Dr. Gordon Teichner at the behest of his primary care doctor, Dr. Joseph West, due to disruptive behaviors and poor grades in school. Tr. at 494. He was fifteen years old at the time. *Id.* Plaintiff's mother told Dr. Teichner that Plaintiff was expelled from school in the eighth grade due to behavior problems, but readmitted later after appearing before the school board. Tr. at 495. Plaintiff obtained a full scale IQ score of 65, which was in the first percentile and considered to be extremely low range of functioning. Tr. at 497. Dr. Teichner concluded that Plaintiff's overall intellectual abilities and performance-related abilities were in the mildly mentally retarded range, while his verbal abilities were in the borderline intellectual functioning range. Tr. at 502. He concluded that Plaintiff's behaviors were consistent with a diagnosis of oppositional defiant disorder and warranted intervention. Tr. at 503. He suggested an alternative public school placement as well as continued medication management. *Id.*

A functional behavioral assessment dated January 30, 2006, noted that Plaintiff made inappropriate comments to staff, did little homework, disrupted those around him, and slept in class. Tr. at 265. His primary disability was felt to be ADHD, though his

4

bad behavior was not attributed to his disability. Tr. at 272. Plaintiff's IEP team met on May 3, 2006, following his expulsion hearing and determined that he could still exit high school that year with a certificate of IEP completion if he attended Berkeley Alternative School. Tr. at 240.

Francis J. Fishburne, Ph.D., a consultative psychologist, examined Plaintiff on April 13, 2007. Tr. at 182–85. Plaintiff reported graduating from high school with some special education. Tr. at 182. Dr. Fishburne reviewed a prior psychological evaluation dated June 17, 2003, which noted a history of disruptive behavior, a diagnosis of ADHD, and a full scale IQ of 65. Tr. at 182. Plaintiff stated that he was able to do household chores and was independent for personal care, but was noted to be "unaware of his limitations." Tr. at 183. Plaintiff denied problems with concentration and memory. *Id.* Dr. Fishburne later noted that Plaintiff's thinking was "limited and somewhat concrete." *Id.* Plaintiff was noted to have an appropriate mood and affect and was cooperative with the evaluation. *Id.* Following administration of the Wechsler Adult Intelligence Scale, Dr. Fishburne assessed Plaintiff with a full-scale IQ score of 69. Tr. at 183–84. Plaintiff was noted to read at a seventh-grade level, spelling at a fourth-grade level; and doing arithmetic at a third-grade level. Tr. at 184. Dr. Fishburne diagnosed ADHD and oppositional defiant disorder by history as well as mild mental retardation. Tr. at 185. He assigned Plaintiff a GAF score of 50. *Id.* Dr. Fishburne stated that Plaintiff's intelligence was generally unchanged when compared to a 2003 test and recommended that any benefits awarded to Plaintiff be handled by another responsible adult because of his low level of intellectual functioning. *Id.*

On April 27, 2007, Jeffrey Vidic, Ph.D., a state-agency consultant, completed a Psychiatric Review Technique ("PRT"). Tr. at 197–210. Dr. Vidic found that Plaintiff suffered from the medically-determinable impairment of borderline intellectual functioning. Tr. at 198. He opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 207. The narrative portion of the report appears to rely entirely on the findings in Dr. Fishburne's examination. Tr. at 209. Dr. Vidic also completed a mental residual functional capacity ("RFC") assessment in which he opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions and his ability to carry out detailed instructions. Tr. at 211. Dr. Vidic further stated that Plaintiff was capable of simple one- and two-step tasks and could complete a normal workday and workweek with customary breaks. Tr. at 213.

On July 13, 2007, Plaintiff presented to Dr. West with severe headaches. Tr. at 431. On December 17, 2007, Plaintiff presented to Dr. West again requesting to get back on medication for his ADHD. Tr. at 432. Plaintiff reported that he was applying for "disability." *Id.* Dr. West prescribed Adderall. *Id.*

On May 19, 2008, Judith Von, Ph.D., a state-agency psychologist, found that Plaintiff had ADHD and opined that he was capable of attending to simple, repetitive tasks for two-hour periods 40 hours weekly; making simple work-related decisions; responding to minor changes in work routine with minimal supervision; working in the presence of others and accept supervision; and making simple plans. Tr. at 436–53.

Delores Gibbs, M.D., a consultative physician, examined Plaintiff on November 18, 2008. Tr. at 455–58. Plaintiff reported graduating high school. Tr. at 455. He also

reported having headaches that he related to poor sleep habits for which cold water on his head was helpful, using medication for asthma, and having difficulty focusing with a previous grocery store bagger job. *Id.* He noted that when told to mop the floor at work, he found himself in the walk-in freezer moving boxes. *Id.* He stated that he lived with his mother and two siblings and enjoyed walking, vacuuming, spending time with his puppy, and going on the internet. *Id.* Dr. Gibbs observed that Plaintiff's nose- and thumb-to-finger examinations were slow and that he tandem walked with difficulty. Tr. at 456. Plaintiff's judgment was considered poor and he was unable to interpret abstract proverbs, count backwards, or name the governor of South Carolina. *Id.* Dr. Gibbs diagnosed a history of headaches, probable attention deficit disorder, and mental delay, and concluded that Plaintiff should not handle funds. *Id.*

Cashton B. Spivey, Ph.D., a consultative licensed clinical psychologist, examined Plaintiff on November 21, 2008. Tr. at 460–62. Dr. Spivey observed that Plaintiff was disoriented to place, incapable of performing serial 7's, unable to spell "world" backwards, and unable to restate a sentence or accurately reproduce a drawing. Tr. at 461. The doctor opined that Plaintiff had mild cognitive difficulties, that his insight and judgment were fair to good, that his general intelligence was "likely" in the low-average range, and that he may have difficulty managing funds. Tr. at 461–62.

On December 7, 2008, Salley S. Jessee, M.D., a state-agency psychiatrist, opined that Plaintiff was moderately limited in activities of daily living ("ADLs"), in maintaining social functioning, and in maintaining concentration, persistence, or pace. Tr. at 485. She also found that Plaintiff had experienced one or two episodes of

decompensation of an extended duration. *Id.* She opined that he was moderately limited in his ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. Tr. at 489–90. Dr. Jessee found that Plaintiff was capable of understanding and carrying out simple, repetitive, routine tasks for two-hour periods during a normal workday; making simple work decisions; accepting supervision and relating to coworkers (but work best with minimal interpersonal interactions); and adapting to simple changes. Tr. at 491.

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the August 17, 2010, hearing, Plaintiff testified that he had been in special education classes during school. Tr. at 23–24. He stated that he had attempted to join regular classes about three times, but was always sent back to special education classes. Tr. at 24. He stated that he had problems functioning and concentrating on the work. *Id.* Plaintiff testified that he was able to take out the garbage at home. Tr. at 25. He stated he thought he was good at adding, subtracting, reading, and writing. *Id.* He stated that he failed the written driver's exam four times. Tr. at 27. Plaintiff testified that he had a job bagging groceries for about a month, but decided not to go back to the job after being

8

arrested for refusing to give his teacher his cell phone. Tr. at 22, 30–31. He also stated that he was distracted at work because he talked on his cell phone a lot. Tr. at 31. Plaintiff weighed 282 pounds and was 5'6" at the hearing. *Id.* He stated that he sometimes got short of breath and used an inhaler. Tr. at 26, 29.

### b.     Testimony of Plaintiff's Sister

Plaintiff's sister testified that Plaintiff had difficulty with other children when in school (Tr. at 35), worked as a bagger for about eight months, and was fired after becoming violent when the supervisor asked him to get rid of his cell phone. Tr. at 32–33. She said that he lost the job before he got in trouble with his cell phone at school. Tr. at 33. She testified that Plaintiff did not perform household chores and would use profanity and "blow up" if asked to do so. Tr. at 34. She testified that his hygiene was especially poor and that he sometimes had to be forced to bathe by their mother. Tr. at 35. She stated that he had bacteria on his body and a bad smell from not bathing. Tr. at 36. She said that he required constant attention. *Id.*

### c.     Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown reviewed the record and testified at the hearing. Tr. at 38. The ALJ did not consider Plaintiff's prior work as a bagger to be PRW. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile with no physical limitations and who could work at any exertional level, but could not be exposed to industrial hazards; was limited to repetitive tasks in a low-stress setting; could not be exposed to the general public; and could not engage in complex reading, writing, or mathematical computation. *Id.* The ALJ asked whether there were any unskilled jobs

consistent with the hypothetical. *Id.* The VE identified the jobs of unskilled grader/sorter, cleaner/washer, and assembler, and provided the incidence of these jobs in the regional and national economies. Tr. at 38–39. Upon questioning by Plaintiff's counsel, the VE stated that the inability to maintain pace would interfere with the ability to perform the jobs identified. Tr. at 39. The VE stated that if the limitation on pace was severe and continuous, those jobs would not be available. *Id.* He stated that an inability to concentrate would likewise impact the listed jobs. Tr. at 40.

### 2. The ALJ's Findings

In his September 17, 2010, decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 11, 2008, the application date (20 CFR 416.971 *et seq.*).
2. The claimant has the following severe impairment: mild mental retardation (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to hazards, simple, routine repetitive tasks, involving low stress, defined as no more than occasional decision making or changes in the work setting, and involving no exposure to the general public or requirements for complex reading, writing or math.
5. The claimant has no past relevant work (20 CFR 416.965).
6. The claimant was born on March 7, 1988 and was 20 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).
7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

          national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since April 11, 2008, the date the application was filed (20 CFR 416.920(g)).

Tr. at 12–18.

## II.   Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)     The Commissioner improperly barred Plaintiff from appealing his age-18 redetermination; and

2)     The Commissioner's decision was not based on substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

### A.   Legal Framework

#### 1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

11

(discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 416.920(h).

(1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    The ALJ's Decision is Not Supported by Substantial Evidence

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. This broad argument includes two more narrowly-tailored arguments: that the ALJ erred in finding that Plaintiff's alleged ADHD was not a severe impairment and that Plaintiff did not meet Listing 12.05(C) (mental retardation).[4]

---

[4] Plaintiff also argues that the ALJ failed to comply with SSR 11-2p in reaching his decision. [Entry #16 at 10–11]. However, SSR 11-2p was not effective until September 12, 2011—nearly a year after the ALJ rendered his decision on September 17, 2010. Therefore, the court need not consider the application of this ruling. *See Lancaster v. Astrue*, C/A No. 11-418, 2012 WL 6652539, at *3 (E.D. Ky. Dec. 20, 2012) (holding the court did not need to consider the application of SSR 11-2p where it was not in effect at the time of the ALJ's ruling).

### a. ADHD as a Severe Impairment

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]"  20 C.F.R. § 416.908.  It is the claimant's burden to prove that he suffers from a medically-severe impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 145 n. 5 (1987).

In finding that Plaintiff's alleged ADHD was not a severe impairment, the ALJ stated only that Plaintiff had reported to Dr. Spivey that he participated in outpatient counseling to address attention deficit difficulties, but stated that he was no longer in outpatient counseling and was not taking any medications. Tr. at 13.  The ALJ noted that he considered "the complete medical history consistent with 20 CFR 416.912(d)."  Tr. at 10.  That regulation provides that before making a determination that a claimant is not disabled, the Commissioner will develop the claimant's completed medical history for at least the 12 months preceding the month in which the claimant filed his application *unless there is reason to believe that development of an earlier period is necessary*."  20 C.F.R. § 416.912(d) (emphasis added).  Also pursuant to 20 C.F.R. § 416.912, a claimant must furnish to the Commissioner "medical and other evidence" that may be used to

15

reach conclusions about the claimant's impairments. 20 C.F.R. § 416.912(a). Other evidence includes evidence from educational personnel showing the severity of the claimant's impairment(s) and its impact on the claimant's ability to work. 20 C.F.R. § 416.912(b)(4); 20 C.F.R. § 416.913(d)(2).

Plaintiff submitted hundreds of pages of school records to the ALJ. Although the records were dated more than 12 months prior to Plaintiff's filing date, they post-date Plaintiff's alleged onset date. The records document that Plaintiff was taught in a self-contained special education classroom for at least five years as a result of his diagnosed ADHD. Tr. at 226–428. The records also document that Plaintiff's ADHD adversely affected his attention span (Tr. at 226), he worked at a "slow tempo" (Tr. at 218), and he was "unrealistic concerning his own ability" (*id.*). In considering whether Plaintiff's impairments were severe or non-severe, the ALJ failed to address any of Plaintiff's school records. In fact, he did not address those records anywhere in his decision. The ALJ likewise failed to address Dr. West's record dated December 17, 2007 (less than four months prior to the application date), which document a prescription for Adderall to treat Plaintiff's ADHD. Tr. at 432. Because the ALJ did not consider these records, he dismissed Plaintiff's claims of ADHD with very little discussion. The court finds that the ALJ was required to do more and that his finding that Plaintiff's alleged ADHD was not severe is not supported by substantial evidence. On remand, the ALJ is directed to discuss all relevant records and to determine whether a consultative examination addressing Plaintiff's alleged ADHD is necessary. The ALJ should also address the

oppositional behavior documented in the record and address what impact, if any, Plaintiff's behavioral history has on his ability to function in the workplace.

### b. Listing 12.05C

Plaintiff also contends that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment under Listing 12.05C. [Entry #18 at 3]. Listing 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function. . . .

20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05.

Under Section 12.05C, a claimant's IQ score must be 60 to 69 inclusive, and second, he must be able to demonstrate an additional significant limitation. Here, the ALJ acknowledged that Plaintiff's full scale IQ score was in the 60–70 range, but found no evidence of an additional physical or other mental impairment that would affect the performance of work-related activities. *Id.* Plaintiff asserts that his ADHD satisfies the second component of Listing 12.05C, rendering him disabled under the Listing. In light of the foregoing finding that the ALJ did not properly evaluate Plaintiff's ADHD, the ALJ's conclusion that Plaintiff did not meet Listing 12.05C is likewise not supported by substantial evidence. On remand, the ALJ is directed to specifically address whether Plaintiff's ADHD, combined with his full scale IQ score, satisfies Listing 12.05C.

17

2.     Age-18 Redetermination

Plaintiff argues the Commissioner erred by improperly barring him from appealing his age-18 redetermination. [Entry #16 at 7]. Plaintiff concedes, however, that he did not ask the court to require the Commissioner to reopen his redetermination application. [Entry #18 at 2]. Instead, Plaintiff argues the ALJ reopened the application by implication and that the decision is therefore reviewable by the court. *Id.*

Defendant argues that the status of the request for reconsideration at the time of the ALJ's decision is unclear and that it may have been pending before the state agency. [Entry #17 at 8–9]. The court agrees that the record is not clear as to whether the Commissioner has rendered a final decision on Plaintiff's request for reconsideration. For that reason, and because Plaintiff did not seek review of the redetermination decision in his complaint, the court declines to find that the ALJ constructively reopened the application. The court further declines to rule on the propriety of the Commissioner's decision on the redetermination application. On remand, however, the ALJ is cautioned that to the extent a final decision has been rendered on Plaintiff's request for reconsideration, proper consideration of the claim currently before this court may operate as a constructive reopening of Plaintiff's prior claim. *See Barton v. Sec'y of Health and Human Servs.*, 683 F. Supp. 1024, 1029–30 (D.S.C. 1988) (finding ALJ implicitly reopened earlier application by considering all of the evidence presented and ruling on the merits) (citing *McGowen v. Harris*, 666F.2d 60 (4th Cir. 1981).

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.  Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to 42 U.S.C. § 405(g).

IT IS SO ORDERED.

April 19, 2013                                             Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge